**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES DZIEDZIC and KIMBERLY DZIEDZIC, husband and wife, | No. 4:19-CV-02030 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| UNITED RENTALS, INC., CNH INDUSTRIAL AMERICA, LLC, d/b/a CASE CONSTRUCTION, TAG MANUFACTURING, INC., and JOHN DOES 1-20, | |
| Defendants. | |

**MEMORANDUM OPINION**

**MARCH 22, 2022**

# I.    BACKGROUND

Plaintiffs James and Kimberly Dziedzic filed a thirteen-count complaint, alleging strict products liability, negligence, breach of warranty, and loss of consortium.  These claims are predicated on the Court's diversity jurisdiction and brought under Pennsylvania law.  Defendants include United Rentals, Inc., CNH Industrial America, LLC, TAG Manufacturing, Inc., and twenty John Doe defendants.

Instead of moving to dismiss, United Rentals, CNH, and TAG each answered the Dziedzics' Amended Complaint.  And after discovery closed, these three Defendants each moved for summary judgment in their favor.  Their motions for

summary judgment are now ripe for disposition.  For the reasons below, they are denied in part and granted in part.

## II.    DISCUSSION

### A.    Standard of Review

The Court begins its analysis with the standard of review that undergirds summary judgment.  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[1]  The Supreme Court of the United States has advised that Federal Rule of Civil Procedure 56 "should be interpreted in a way that allows it to accomplish this purpose."[2]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4]  A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5]  And a plaintiff must "point to

---

[1]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[2]    *Id.* at 324.

[3]    Fed. R. Civ. P. 56(a).

[4]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[5]    *Clark*, 9 F.3d at 326.

admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[6]

A judge's task when "ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7]  Thus, if "the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8]

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."[9]  Part of the judge's role at this stage is to ask "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[10]  In answering that question, the Court "must view the facts and evidence presented on the motion

---

[6]   *Id*.
[7]   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).
[8]   *Id*.
[9]   *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252 (alterations in original)).
[10]  *Liberty Lobby*, 477 U.S. at 252 *(*quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)) (alteration and emphasis in original).

in the light most favorable to the nonmoving party."[11]  The evidentiary record at trial

will typically never surpass what was compiled during discovery.

The party requesting summary judgment bears the initial burden of supporting

its motion with evidence from the record.[12]  For example, while "at the motion-to-

dismiss stage of proceedings a district court is obligated to accept the allegations in

a plaintiff's complaint as true, it does not accept mere allegations as true at the

summary judgment stage."[13]  The moving party must identify those portions of the

"pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, which it believes demonstrate the absence of a genuine

issue of material fact."[14]  "Regardless of whether the moving party accompanies its

summary judgment motion with affidavits, the motion may, and should, be granted

so long as whatever is before the district court demonstrates that the standard for the

entry of summary judgment, as set forth in Rule 56(c), is satisfied."[15]

For movants and nonmovants alike, the assertion "that a fact cannot be or is

genuinely disputed" must be supported by: (1) citations to particular parts of

materials in the record that go beyond mere allegations; (2) a showing that the

materials cited do not establish the absence or presence of a genuine dispute; or (3)

---

[11] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[12] *Celotex*, 477 U.S. at 323.
[13] *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 330 (3d Cir. 2016).
[14] *Id.* (internal quotations omitted).
[15] *Id.*

a display that an adverse party cannot produce admissible evidence to support the fact.[16]

Summary judgment is effectively "put up or shut up time" for the nonmoving party.[17] When the movant properly supports his motion, the nonmoving party must show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[18] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[19] Instead, it must "identify those facts of record which would contradict the facts identified by the movant.'"[20] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the Court may "consider the fact undisputed for purposes of the motion."[21] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[22]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether

---

[16] Fed. R. Civ. P. 56(c)(1).

[17] *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).

[18] *Liberty Lobby*, 477 U.S. at 250.

[19] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

[20] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).

[21] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).

[22] Fed. R. Civ. P. 56(c)(3).

there is a genuine issue for trial."[23]  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."[24]

### B.    Undisputed Facts

With that standard outlining the framework for review, the Court now turns

to the undisputed facts.

In an April 30, 2015, purchase order, United Rentals, Inc., bought a CX130C

CASE excavator with bucket and thumb attachments from CNH Industrial America,

LLC.[25]  Sumitomo, a Japanese corporation, manufactured the excavator.[26]  But TAG

Manufacturing, Inc., manufactured and installed the bucket and thumb

attachments.[27]

After installing the attachments, TAG shipped the excavator including

attachments to United Rentals on May 18, 2015.[28]  And on October 4, 2018, United

Rentals and Matrix NAC entered into a Rental Agreement for the CX130C

excavator.[29]    The following day, Matrix accepted the excavator in South

Williamsport, Pennsylvania.[30]

---

[23]    *Liberty Lobby*, 477 U.S. at 249.
[24]    *Id*. at 249–50 (internal citations omitted).
[25]    Doc. 39-1.
[26]    Doc. 39-2 at 2.
[27]    Doc. 42 at ¶ 14.
[28]    Docs. 39-5, 42-7.
[29]    Doc. 39-6.
[30]    *Id.*

On February 16, 2019, James Dziedzic was working as a laborer/ground hand for Matrix in South Williamsport.[31]  He graded stones and pulled out concrete fence posts as Joseph Wielgosz operated the CX130C excavator.[32]  With the thumb attachment of the excavator on a pile of rubble, Dziedzic tried removing the lockback pin that holds the thumb in place.[33]  But the pin moved, amputating the middle and ring fingers of Dziedzic's right hand.[34]  Then litigation ensued.

### C.   Analysis

#### 1.   John Doe Defendants

The Dziedzics sue twenty John Doe defendants in their Amended Complaint. But discovery has closed, and the Dziedzics have yet to identify these John Doe defendants.  Accordingly, John Does 1-20 are dismissed.[35]  So are the claims against these John Doe defendants: Counts X, XI, and XII.

---

[31]   Doc. 42 at ¶¶ 4, 24.

[32]   *Id.*

[33]   Doc. 46-24 at 1.

[34]   Doc. 22 at ¶ 18.

[35]   *See Blakeslee v. Clinton County.*, 336 F. App'x 248, 250 (3d Cir. 2009) ("If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed."); *see also Graham-Smith v. City of Wilkes-Barre*, No. 3:17-CV-00239, 2020 WL 9607112, at *5 (M.D. Pa. Feb. 26, 2020) ("Thus, if a plaintiff fails to amend a complaint to identify unnamed John Doe defendants, a court may *sua sponte* dismiss those defendants prior to ruling on a summary judgment motion."), *report and recommendation adopted,* No. 3:17-CV-239, 2021 WL 2020591 (M.D. Pa. May 19, 2021).

### 2.   Strict Products Liability

"There are three different types of defective conditions that can give rise to a strict liability claim: design defect, manufacturing defect, and failure-to-warn defect."[36]  The Court addresses each type of defect in turn.  In sum, Defendants' motions for summary judgment are denied as to the Dziedzics' design-defect claims but are granted as to the Dziedzics' manufacturing-defect and warning-defect claims.

### a.   Design Defect

"Pennsylvania law requires that a plaintiff prove two elements in a product liability action: that the product was defective, and that the defect was a substantial factor in causing the injury.  Specifically, in a design defect case, the question is whether the product should have been designed more safely."[37]  "The plaintiff may prove defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer, or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions."[38]

"Whether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on

---

[36]  *Phillips v. A-Best Prod. Co.*, 665 A.2d 1167, 1170 (Pa. 1995).
[37]  *Spino v. John S. Tilley Ladder Co.*, 696 A.2d 1169, 1172 (Pa. 1997) (citations omitted).
[38]  *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 335 (Pa. 2014).

the issue."[39]  "Similarly, the issues of proximate causation, whether a change to the product was substantial, and whether that change was reasonably foreseeable, are generally for the jury."[40]  "Thus, the trial court is relegated to its traditional role of determining issues of law, *e.g.,* on dispositive motions, and articulating the law for the jury, premised upon the governing legal theory, the facts adduced at trial and relevant advocacy by the parties."[41]

### i.      Expert Testimony

The Dziedzics' expert witness, Craig D. Clauser, has opined that the accident "occurred because the thumb lock back mechanism was defectively designed and dangerous in that it allowed this pinch point hazard to exist."[42]  Clauser's expert report also includes an alternative design "to eliminate the hazard that would have added nothing to the cost and was technically feasible."[43]  From this expert testimony, a reasonable juror could find TAG's thumb attachment defective.[44]

TAG counters that Clauser's opinion is speculative because he offers two scenarios for how the accident occurred: 1)  a piece of rubble that the thumb was sitting on slipped or tipped, allowing the thumb to drop or 2) an operator

---

[39]  *Id.*
[40]  *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 716 (3d Cir. 2018).
[41]  *Tincher*, 104 A.3d at 335.
[42]  Doc. 44-24 at 3.
[43]  *Id.* at 4.
[44]  *See Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1049 (3d Cir. 1997) ("We have previously held that expert testimony alone may be sufficient, for purposes of summary judgment, to demonstrate feasibility . . . .") (citation omitted).

hydraulically altered the thumb as it was sitting on a pile of rubble.[45]  But these two scenarios are not "numerous possible causes."[46]  Indeed, both scenarios indicate one potential defect: the pinch point between the main pin hydraulic thumb and the handle of the lockback pin mechanism.  Because the Dziedzics have consistently identified this pinch point as the accident's cause, their "theory of causation is not mere conjecture."[47]  Accordingly, their design-defect claims survive summary judgment.

### ii.    Misuse

TAG further counters that the accident would not have occurred if Dziedzic and Joseph Wielgosz had followed its instructions.  Specifically, TAG argues that if Wielgosz had not been in the operator's cab or hydraulically manipulated the thumb while Dziedzic was trying to remove the pin, the accident would not have happened.  In other words, TAG claims misuse of its products.

"To establish misuse of the product, the defendant must show that the use was 'unforeseeable or outrageous.'"[48]  In his deposition, Dziedzic's coworker Edward Mapes testified that he never saw anybody at the job site remove or insert the safety

---

[45]  Doc. 34-6 at 7, 50.

[46]  *Mack v. Pilot Travel Centers, LLC*, No. 1:14-CV-00090, 2015 WL 9946411, at *7 (M.D. Pa. Dec. 22, 2015), *report and recommendation adopted,* No. 1:14-CV-90, 2016 WL 374436 (M.D. Pa. Feb. 1, 2016).

[47]  *Id.* at *7.

[48]  *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1096 (Pa. 2012*); see also Suchomajcz v. Hummel Chem. Co.*, 524 F.2d 19, 25 (3d Cir. 1975) ("Pennsylvania does impose liability upon a manufacturer for harm caused by misuse of its product, if that misuse was foreseeable.").

pin in any position other than the one Dziedzic had been in when the accident occurred.[49]  Matrix's general superintendent, Loren Nye, also testified that Dziedzic "had done everything that [Matrix employees] had been doing to kind of make it so that [the thumb] didn't swing when you pull the pin out."[50]  From these witnesses' testimony, a reasonable juror could conclude that Dziedzic and Wielgosz's process was foreseeable, or at least not outrageous.[51]  Accordingly, the Court cannot grant summary judgment in TAG's favor on the basis of misuse.

### iii.    Substantial Change

United Rentals argues that the Dziedzics have failed to present evidence that it substantially altered or modified the TAG thumb in a manner that caused or contributed to the accident.  "Pursuant to Pennsylvania law, courts have held that a manufacturer or seller is not liable for injuries caused by a defective product if the defect was created by a substantial alteration in the product amounting to a supervening or intervening cause of the plaintiff's injuries."[52]  Though defendants may raise the "substantial change defense" in products-liability cases,[53] United

---

[49]  Doc. 44-20 at 22.

[50]  Doc. 44-21 at 27.

[51]  *See McKenzie v. Dematic Corp.*, No. CIV.A. 3:12-250, 2015 WL 3866633, at *5 (W.D. Pa. June 23, 2015) ("Based on the facts presented, the Court is unable to find as a matter of law that Plaintiff's reaching under the trash conveyor was 'unforeseeable and outrageous' conduct. Plaintiff states that split-case pickers routinely placed totes onto the powered accumulator conveyor directly beneath the trash conveyor . . . .").

[52]  *Davis v. Berwind Corp.*, 640 A.2d 1289, 1297 (Pa. Super. Ct. 1994), *aff'd,* 690 A.2d 186 (Pa. 1997).

[53]  *Merriweather v. E. W. Bliss Co.*, 636 F.2d 42, 45–46 (3d Cir. 1980).

Rentals has not done so here.[54]  And the Dziedzics need not rebut a defense United

Rentals has not raised.  Accordingly, the Dziedzics' failure to adduce evidence of a

substantial alteration does not vitiate their design-defect claims at this stage.

### iv.    § 402A Seller

CNH argues that it is not liable for the thumb's design as a seller under the

Restatement (Second) of Torts § 402A (1965).  The Supreme Court of Pennsylvania

adopted § 402A in *Webb v. Zern*.[55]  Under § 402A, a seller is liable "for physical

harm thereby caused to the ultimate user or consumer" if "the seller is engaged in

the business of selling such a product."

Various factors indicate whether a defendant is a § 402A seller, including (1)

whether the defendant is the only member of the marketing chain available to the

injured plaintiff for redress; (2) whether the imposition of strict liability upon the

defendant serves as an incentive to safety; (3) whether the defendant will be in a

better position than the consumer to prevent the circulation of defective products;

and (4) whether the defendant can distribute the cost of compensating for injuries

resulting from defects by charging for it in its business.[56]  Sellers include "all

suppliers of a defective product in the chain of distribution, whether retailers,

partmakers, assemblers, owners, sellers, lessors, or any other relevant category."[57]

---

[54]  Docs. 37, 38.
[55]  220 A.2d 853, 854 (Pa. 1966).
[56]  *Francioni v. Gibsonia Truck Corp.*, 372 A.2d 736, 739 (Pa. 1977).
[57]  *Burch v. Sears, Roebuck & Co.*, 467 A.2d 615, 621 (Pa. Super. Ct. 1983).

Here, CNH argues that it is not a seller under § 402A because it did not design, manufacture, install, possess, control, or financially benefit from the sale of the thumb.  To support its argument, CNH analogizes this case to two cases: *Balczon v. Machinery Wholesalers Corp.*[58] and *Musser v. Vilsmeier Auction Co.*[59]  In both cases, courts held that the defendants were not § 402A sellers because they lacked "an ongoing relationship with" the respective manufacturers.[60]

By contrast, CNH's product specialist, Justin Conder, testified that he had seen TAG's instructions for the thumb "in the past."[61]  Conder further testified that he was familiar with and had trained CNH's sales personnel on TAG's thumb, a "fairly common attachment."[62]  From this testimony, a reasonable juror could infer an ongoing relationship between CNH and TAG.  Accordingly, a genuine dispute of material fact exists about whether CNH was a seller of the thumb under § 402A, precluding summary judgment on this basis.[63]  Defendants' motions for summary

---

[58] 993 F. Supp. 900, 905 (W.D. Pa. 1998).
[59] 562 A.2d 279 (Pa. 1989).
[60] *Balczon*, 993 F. Supp. at 905; *Musser*, 562 A.2d at 282.
[61] Doc. 46-22 at 14.
[62] *Id.* at 7.
[63] *See Simeone ex rel. Est. Of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 680 (E.D. Pa. 2005) (denying defendant's motion for summary judgment because it "may qualify as a 'seller' subject to § 402A liability"); *see also Wolf v. Methodist Hosp.*, No. CIV.A. 84-6258, 1987 WL 18585, at *5 (E.D. Pa. Oct. 14, 1987) ("It cannot be said, therefore, that as a matter of law Corbett is not in the business of selling the product that injured Mr. Wolf."); *Hoffman v. Loos & Dilworth, Inc.*, 452 A.2d 1349, 1355 (Pa. Super. Ct. 1982) (reversing summary judgment in favor of defendant, which "was in the business of selling or marketing merchandise.").

judgment are therefore denied as to the design-defect claims in Counts I, IV, and VII of the Amended Complaint.

### b.    Manufacturing Defect

TAG argues that the Dziedzics have not adduced evidence of a manufacturing defect. The Dziedzics respond that they "do not assert a manufacturing defect claim" and "do not intend to assert a manufacturing defect claim at trial."[64]  Accordingly, Defendants' motions for summary judgment are granted as to any manufacturing defect the Dziedzics may have alleged in the Amended Complaint.

### c.    Warning Defect

"A plaintiff raising a failure-to-warn claim must establish only two things: that the product was sold in a defective condition 'unreasonably dangerous' to the user, and that the defect caused plaintiff's injury."[65]  "To establish that the product was defective, the plaintiff must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product 'unreasonably dangerous.'"[66]  But "a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."[67]

---

[64]   Doc. 44-1 at 20.
[65]   *Phillips*, 665 A.2d at 1171.
[66]   *Id.*
[67]   Restatement (Second) of Torts § 402A cmt. j.

- 14 -

"For the plaintiff in a failure-to-warn claim to establish the second element, causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller."[68]  "If the plaintiff fails to establish either of these two elements, the plaintiff is barred from recovery as a matter of law."[69]  "The determinations of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the trial judge."[70]

Here, Defendants adduce TAG's Lockback Pin Engagement/Disengagement Instructions.[71]  Plaintiffs' expert Craig Clauser testified that he did not have any criticisms of these instructions.[72]  Clauser also repeatedly testified that the accident would not have occurred if Dziedzic and Wielgosz had followed these instructions.[73] Because TAG's Lockback Pin Engagement/Disengagement Instructions would have prevented the accident if followed, the Court finds these instructions adequate.[74]

---

[68] *Phillips*, 665 A.2d at 1171.
[69] *Id.* at 1172.
[70] *Mackowick v. Westinghouse Elec. Corp.*, 575 A.2d 100, 102 (Pa. 1990).
[71] Doc. 34-2.
[72] Doc. 34-6 at 26.
[73] *Id.* at 26, 35, 54, 61.
[74] *See Chandler v. L'Oreal USA, Inc.*, 774 F. App'x 752, 754 (3d Cir. 2019) (affirming summary judgment in defendant's favor on failure-to-warn claim); *Carr v. Gillis Associated Indus., Inc.*, 227 F. App'x 172, 175–76 (3d Cir. 2007) ("The District Court also correctly concluded that Gillis was entitled to summary judgment on Carr's claim for defective warning. . . . The label actually provided, warning the user to 'make sure the rubber tips are on legs and that tips rest on floor when you are on the ladder,' was therefore adequate."); *Mackowick*, 575 A.2d at 103 ("The warning provided on the lid of the capacitor clearly instructed the user to . . . relieve any danger of electrocution from the uninsulated, live electrical source. . . . With a sufficient warning present, this product should not have been considered 'defective' and the cause of action in strict liability should have failed as a matter of law.").

Moreover, Matrix signed and agreed that it had "received and read all applicable safety bulletins, operator manuals and tabulated data . . . ."[75]  From this, a reasonable juror could conclude that Matrix received TAG's Lockback Pin Engagement/Disengagement Instructions.  Indeed, the Dziedzics do not adduce any evidence that Defendants did not provide these instructions.  And in the absence of evidence to the contrary, there is no genuine dispute of material fact that Defendants provided an adequate warning through TAG's Lockback Pin Engagement/Disengagement Instructions.[76]

The Dziedzics counter with Clauser's opinion that:

> Warnings could have been on the thumb and in the cab directing the user to safe use instructions that should have been supplied with the operator's manual. Case could have provided these requirements to TAG when they ordered the thumb. United Rentals could have assured that such warnings and instruction were provided when they rented the unit. Clearly, Messrs. Dziedzic and Wielgosz were not aware of the TAG recommended practice for lock back pin removal and insertion. Effective warnings and instructions could have corrected this.[77]

But Clauser's opinion "does not evidence" that TAG's Lockback Pin Engagement/Disengagement Instructions "were inadequate."[78]  Clauser "merely

---

[75]  Doc. 39-6 at 1.

[76]  *See Varner v. MHS, Ltd.*, 2 F. Supp. 3d 584, 596 (M.D. Pa. 2014) (granting summary judgment in defendant's favor on failure-to-warn claim when "plaintiff has not shown that defendant did not provide such a warning with its strap when it was shipped"); *see also Bentzley v. Medtronic, Inc.*, 827 F. Supp. 2d 443, 460 (E.D. Pa. 2011) ("Bare allegations that he did not receive these warnings with his MMT–522 System are not sufficient to raise a genuine issue of material fact . . . . Therefore, the Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's failure-to-warn claims.").

[77]  Doc. 44-24 at 4.

[78]  *Demmler v. SmithKline Beecham Corp.*, 671 A.2d 1151, 1155 (Pa. Super. Ct. 1996) (affirming summary judgment in defendant's favor on failure-to-warn claim).

points out that [Defendants] had the opportunity, but not the obligation, to include helpful information about" the thumb.[79]  "Accordingly, the record supports no basis upon which a reasonable jury could impose liability . . . based on the . . . [instructions] supplied to" Matrix.[80]

The Dziedzics also do not adduce evidence that additional warnings on the thumb and in the cab would have prevented the accident.  In his deposition, Dziedzic did not recall "reading any details that [were] on the outside of the excavator or the . . . boom and the arm."[81]  This testimony does not indicate that Dziedzic would have read or followed additional warnings on the thumb and in the cab.

To the extent Clauser opines that additional warnings on the thumb and in the cab would have prevented the accident, "that opinion is unsubstantiated and therefore fails to create a genuine issue of material fact."[82]  In sum, "[t]here is no record evidence to support a reasonable inference that the existence of additional warnings would have" prevented this accident.[83]  Defendants' motions for summary

---

[79]  *Id.*

[80]  *Id.*; *see also Igwe v. Skaggs*, 258 F. Supp. 3d 596, 613 (W.D. Pa. 2017) (granting summary judgment in defendant's favor because "no authority" requires "a product seller to provide of myriad of similar worded warnings when its issued warning, as understood by the buyer, addresses the alleged defect.").

[81]  Doc. 46-18 at 19.

[82]  *Kline v. Zimmer Holdings, Inc.*, 662 F. App'x 121, 126 (3d Cir. 2016); *see also Wright v. Ryobi Techs., Inc*, 175 F. Supp. 3d 439, 454 (E.D. Pa. 2016) ("It is mere speculation by Wright's expert that a warning on the rip fence itself—say, that the operator needed to independently verify the alignment to avoid a kickback that could lead to serious injury—would somehow have altered Wright's behavior or otherwise prevented the accident . . . .").

[83]  *McCracken v. R.J. Reynolds Tobacco*, 821 F. App'x 122, 127 (3d Cir. 2020) (affirming summary judgment in defendant's favor on failure-to-warn claims); *see also Conti v. Ford Motor Co.*, 743 F.2d 195, 198 (3d Cir. 1984) ("We find the evidence insufficient as a matter

judgment are therefore granted as to warning-defect claims in Counts I, IV, and VII of the Amended Complaint (Doc. 22).

### 3.    Negligence

#### a.    Negligent Design

CNH argues that the Dziedzics' negligence claims "fail for the same reasons their product liability claims for design defect and failure to warn fail."[84]  But as the Court explained above, the Dziedzics strict-liability claims for design defect survive. Accordingly, Defendants' motions for summary judgment are denied as to the negligent-design claims in Counts II, V, and VIII of the Amended Complaint.

#### b.    Negligent Failure-to-Warn

As    the    Court    explained    above,    TAG's    Lockback    Pin Engagement/Disengagement Instructions would have prevented the accident if followed.  And the Dziedzics fail to adduce evidence that additional warnings on the thumb or in the cab would have prevented the accident.  In the absence of such evidence regarding causation, the Dziedzics' negligent failure-to-warn claims fail.[85] Accordingly, Defendants' motions for summary judgment are granted as to the

---

of law to support a reasonable inference that the existence of additional warnings may have prevented the accident from occurring.").

[84]    Doc. 41 at 25.

[85]    *See Kline*, 662 F. App'x 121, 126 (affirming summary judgment in defendant's favor on negligent failure-to-warn claim); *Igwe*, 258 F. Supp. 3d at 615 ("As set out above, the record shows Monroeville's Policy contained a warning the Opticom system could be over run 'by increasing the speed of the emergency vehicle using the device. . . .' Absent a genuine issue of material fact, we enter summary judgment in Global's favor on Mr. Igwe's negligence claim."); *Wright*, 175 F. Supp. 3d at 455 ("We will therefore grant defendants' motion for summary judgment on Wright's negligence claim for failure-to-warn.").

negligent failure-to-warn claims in Counts II, V, and VIII of the Amended Complaint.

### 4.    Breach of Warranty

"An express warranty is a promise made by the seller to the buyer which relates to the goods."[86]  But the Dziedzics do not adduce evidence of any express warranties.[87]  So the Court will address implied warranties instead.

"Both the implied warranty of merchantability and the warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose."[88]  "[T]o exclude or modify the implied warranty of merchantability or any part of it[,] the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."[89]

"Conspicuousness is a question of law for the court."[90]  In assessing conspicuousness, the Court may consider "(1) the placement of the clause in the document; (2) the size of the disclaimer's print; and (3) whether the disclaimer was

---

[86]   *Oppenheimer v. York Int'l*, No. 4348, 2002 WL 31409949, at *3 (Pa. C.P. Oct. 25, 2002).
[87]   Docs. 44, 45, 46.
[88]   *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).
[89]   13 Pa.C.S.A. § 2316(b).
[90]   *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 889 (E.D. Pa. 1996).

highlighted or called to the reader's attention by being in all caps or a different type style or color."[91]

Here, United Rentals and Matrix executed a Rental Agreement stating that "By accepting delivery of the Equipment listed above or making payment(s) to United for the Equipment listed above, Customer agrees to be bound by this Rental Agreement, including the terms and conditions contained on the front and back pages of this Rental Agreement and any attached pages . . . ."[92]   This Rental Agreement includes a "*DISCLAIMER OF WARRANTIES*," providing that

> **UNITED MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. THERE IS NO WARRANTY THAT THE EQUIPMENT IS SUITED FOR THE CUSTOMER'S INTENDED USE, OR THAT IT IS FREE FROM DEFECTS. EXCEPT AS MAY BE SPECIFICALLY SET FORTH IN THIS RENTAL AGREEMENT, UNITED DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, MADE IN CONNECTION WITH THIS RENTAL TRANSACTION.[93]**

This disclaimer is in boldface, capital letters.[94]   And it occupies a paragraph by itself.[95]   Accordingly, the Court finds this disclaimer conspicuous as a matter of law.[96]

---

[91]   *Id.*

[92]   Doc. 39-6 at 1.

[93]   *Id.* at 2.

[94]   *Id.*

[95]   *Id.*

[96]   *See Axalta Coating Sys., LLC v. Midwest II, Inc.*, 217 F. Supp. 3d 813, 819 (E.D. Pa. 2016) ("However, Section 9.2 of the agreement explicitly disclaims these warranties in boldface type. Such conspicuous disclaimers are enforceable under Pennsylvania law. Section 9.2 thus bars Defendant's counterclaim for breach of implied warranties."); *see also Hornberger*, 929 F.

In their brief opposing United Rentals's motion for summary judgment, the Dziedzics do not mention the disclaimer.[97]  Nor do they dispute the disclaimer's conspicuousness or enforceability.[98]  Because United Rentals conspicuously disclaimed the implied warranties of merchantability and fitness in writing, its motion for summary judgment is granted as to Count VI of the Amended Complaint.[99]

Unlike United Rentals, CNH and TAG have not adequately briefed this warranty issue.  Instead, they devote their briefs to design and warning defects.[100] So they "fail to explain how the legal standard and elements to be applied to the . . . warranty claim differ from those to be applied to the" design and warning claims.[101] Accordingly, CNH's and TAG's motions for summary judgment are denied as to Counts III and IX of the Amended Complaint.

---

Supp. at 889 ("While the warranty disclaimer appears in the middle of the booklet, the disclaimer is set forth in boldfaced print as compared to the remainder of the warranty language. Thus, this Court concludes, as a matter of law, that the language at issue is 'conspicuous' such that the implied warranty of merchantability was properly disclaimed pursuant to 13 Pa.C.S.A. § 2316(b).").

[97]  Doc. 45-1.

[98]  *Id.*

[99]  *See Demorato v. Carver Boat Corp.*, 304 F. App'x 100, 104 (3d Cir. 2008) ("There can be no breach of the implied warranty of merchantability by SIBS, Curry, or Carver because that warranty was disclaimed in the sales contract in conspicuous lettering and in terms that included the word 'merchantability.' Any implied warranty of fitness for a particular purpose was similarly disclaimed.") (citations omitted).

[100]  Docs. 35, 41, 47, and 48.

[101]  *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, No. CIV. 10-3684 FSH PS, 2012 WL 2916827, at *10 (D.N.J. July 17, 2012) ("Accordingly, the Court will deny Nestle's motion for summary judgment as to the breach of express warranty claim.").

### 5.      Loss of Consortium

Finally, Kimberly Dziedzic alleges loss of consortium.  As several of James Dziedzic's claims survive summary judgment, so does Kimberly Dziedzic's loss-of-consortium claim.[102]  Accordingly, Defendants' motions for summary judgment are denied as to Count XIII of the Amended Complaint.

## III.    CONCLUSION

John Does 1-20 are dismissed along with the claims against them. Defendants' motions for summary judgment are denied in part and granted in part. An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[102] *See Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 553 (Pa. Super. Ct. 1985) ("We follow the majority view that an action for loss of consortium is derivative of the injured spouse's claim. Pennsylvania courts have long held that an action for loss of consortium is derivative.").